IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN CASTROVINCI; SUSAN M. MCGINLEY, ED.D; JAMES L. POKRIVSAK, JR.; and DAWN REAGLE,<br><br>    Plaintiffs,<br><br>    v.<br><br>EASTON AREA SCHOOL DISTRICT; FRANK PINTABONE, Individually and in His Official Capacity as the President of the Easton Area School Board; ROBERT FEHNEL, Individually and in His Official Capacity as a Member of the Easton Area School Board; KERRI LEONARD-ELLISON, Individually and in Her Capacity as a Former Member of the Easton Area School Board; JANET MATTHEWS, Individually and in Her Capacity as a Former Member of the Easton Area School Board; WILLIAM RIDER, Individually and in His Capacity as a Former Member of the Easton Area School Board,<br><br>    Defendants. | CIVIL ACTION<br>NO. 15-2980 |

## <u>MEMORANDUM</u>

**SCHMEHL, J. /s/ JLS**                                                                                                                  **JUNE 27, 2017**

On September 19, 2016, Defendants moved this Court to grant summary judgment and dismiss Plaintiffs' claim of First Amendment Retaliation. (ECF Docket No. 44.) Throughout their motion, Defendants cite to the "Statement of Undisputed Facts" ("SUF") purported to be the proposed stipulations of facts, agreed upon by both parties, that the movant is required to include with its Rule 56 motion. On October 19, 2016, Plaintiffs filed their brief in opposition to Defendants' motion for summary judgment. (ECF Docket No. 46-1.) However, Plaintiffs note that Defendants failed to

communicate with Plaintiffs and stipulate to the undisputed facts (as required in the policies and procedures) before filing their dispositive motion with this Court. (ECF Docket No. 46-1, at 1-2.) Plaintiffs included a "counterstatement of facts" in their motion disputing or addressing sixty-four (64) of Defendants' "undisputed facts" cited in Defendants' original motion. (ECF Docket No. 46-2.)

Plaintiffs all work or worked for Defendant Easton Area School District. John Castrovinci was Human Resources Director and still works at the district. Susan McGinley was Superintendent of Schools; her contract was not renewed and she was reassigned to work as a fifth grade assistant principal. James Pokrivsak was and still is the district's Director of Athletics. Dawn Reagle was Director of Special Education but resigned her position due to what she considers a constructive discharge.

Defendants are the district itself and several board members. Frank Pintabone was a board member and at the time of the complaint had become board president. Robert Fehnel was board president during the events that give rise to this suit, and was still on the board at the time of the complaint. Janet Matthews, and William Rider were all members at the relevant time but no longer serve on the board. Kerri Leonard-Ellison, was also a member of the board, but has since passed away. (ECF Docket No. 48.)

A. **STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the

"underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## B. ANALYSIS

Defendants' motion for summary judgment argues that Plaintiffs failed to show they engaged in protected First Amendment speech as it was speech pursuant to work/official duties rather than speech as a citizen on a matter of public concern. Defendants further argue that Plaintiffs failed to show the alleged retaliatory actions taken by Defendants were sufficient to deter a person of ordinary firmness from exercising his or her rights and that a causal link existed between the protected activity and retaliation.

Plaintiffs making First Amendment retaliation claims "must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there

3

was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).[1]

There are a number of material facts in dispute which precludes this Court from granting summary judgment. As will be addressed below, Plaintiffs have provided support through their counterstatement of facts. (ECF Docket No. 46-2.) Three facts in particular, relating to the legal standard under First Amendment Retaliation, stand out and will be addressed in further detail: 1) Plaintiffs' speech and Thomas Drago's duties as Director of Technology; 2) Defendants' actions taken after Plaintiffs notified the police of Drago's activity; and 3) the causal connection between Plaintiffs' complaints to the Police and the actions taken by the Easton Area School District ("EASD") Board following the complaints.

### 1. **Protected Activity**

First Amendment protections differ between employees speaking on matters of public concern and employees speaking pursuant to their official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "[T]he first Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* The Supreme Court has held if an employee speaks on a matter of public concern, the employee's speech is protected; conversely, if the employee has spoken pursuant to his or her official duties, there is no First Amendment protection. *Id.*; *see also Morris v. Philadelphia Housing Authority*, 487 Fed.Appx. 37, 39 (3d Cir. 2012).

---

[1] The elements of retaliation claims, and interpretation of those elements, are shared between claims based on different types of protected conduct. See *Lauren W. ex rel. Jean W.*, 480 F.3d at 267 (noting the identity of elements between First Amendment and Rehabilitation Act claims and also citing to Title VII cases). This case in particular crosses over because it is a First Amendment case but is also in the employment context.

Accordingly, employee speech is not protected if the speech performed is within the scope of the employee's routine operations.

Before answering the question of whether Plaintiffs' speech is protected, this Court must first consider Drago's responsibilities as Director of Technology to determine whether Plaintiffs were speaking on matters of public concern or within the scope of their routine employment operations. Both parties dispute the role and function of Thomas Drago as Director of Technology and whether he was permitted to remotely access various computers within the District under its "Acceptable Use Policy." Defendants argue Drago's position gave him access to District-owned computers to perform random searches and perform computer-to-computer onsite operations; therefore, any speech relating to Drago's activity was made pursuant to Plaintiffs' official duties. (ECF Docket No. 44, at 7.) This role, Defendants claim, was understood and accepted by Plaintiff Susan McGinley. (Id.) Defendants further claim the EASD Solicitor, John Freund, believed Drago's conduct was an internal District employment matter and not a criminal matter; a belief allegedly shared by McGinley. (Id. at 8.)

However, Drago's role as the Director of Technology is disputed by Plaintiffs. Plaintiffs allege that Drago was not permitted to internally access any person's computer at EASD without express permission from McGinley. (ECF Docket No. 46-2, at 9.) Plaintiffs also dispute the District's "Acceptable Use Policy" claiming, since the inception of this litigation, that Drago (or any member of his department) could not access another District employee's computer without express consent from McGinley. (Id. at 10-11.) Complicating matters is the fact police found pornographic images on Drago's computer, including a topless picture of one of his female subordinates, leading

5

to criminal charges filed against Drago for violating the Pennsylvania Wiretap Act. (ECF Docket No. 9-10; *see also* ECF Docket No. 1, at ¶7.) Defendants reject Plaintiffs' arguments and counter that the Plaintiffs were not aware of the images on Drago's computer at the time Plaintiffs contacted the police, and therefore could not have been reporting on matters of "public concern." (ECF Docket No. 44, at 9.)

Here, the Court's focus is whether Plaintiffs' speech involved and/or was made within Plaintiffs' official employment capacity, or if Plaintiffs were speaking on matters of public concern. Our analysis depends on Drago's responsibilities as Director of Technology for the District. However, the disputed facts relating to Drago's conduct and scope of the District's "Acceptable Use Policy" make it impossible for the Court at this moment to conclude whether Plaintiffs' speech was a public matter or related to their official duties as public employees; a distinction that determines whether the speech is protected. Therefore, this Court clearly cannot answer whether Plaintiffs' speech is protected, while questions of fact remain, and declines to grant summary judgment.

2. **Retaliatory actions**

First Amendment retaliation requires a showing that defendants' retaliatory actions were sufficient to deter a person of ordinary firmness from exercising his or her rights. "[W]e have held that, in certain circumstances, a public employee may bring a cause of action alleging that his or her First Amendment rights were violated by retaliatory harassment . . . even if he or she cannot prove that the alleged retaliation adversely affected the terms of his or her employment." *McKee v. Hart*, 436 F.3d 165, 169 (3d Cir. 2006). The Third Circuit continued, "being the victim of petty harassments in the workplace . . . even if the employee cannot prove a change in the actual terms of his or her employment . . . could be actionable under the First Amendment." *Id.* at 170.

6

Defendants argue in defense against the claim of retaliation that: Plaintiff Castrovinci's alleged salary freeze was part of an "across-the board salary restructuring" in the EASD, "made for budgetary reasons," and that Castrovinci voluntarily agreed to a freeze; Plaintiff Pokrivsak was subject to a salary freeze, but received cost of living raises during the salary freeze which had commenced prior to Plaintiffs' complaint to the police; and that Plaintiff Reagle voluntarily resigned because she was "moving to another county with her boyfriend." (ECF Docket No. 45, at 7-9.)

Plaintiffs dispute these alleged facts entirely and sustain their allegations against Defendants' purported retaliatory conduct. Castrovinci claims, as Director of Human Services and therefore not a contract employee, that he was improperly subjected to Act 93 which imposes salary caps on contract employees under the Pennsylvania School Code.[2] (ECF Docket No. 46-2, at 32.) This, Castrovinci argues, was in retaliation for his involvement in the Drago matter. Further, Pokrivsak claims his reporting structure was altered and responsibilities as Athletic Director stripped. (ECF Docket No. 46-1, at 21.) Pokrivsak argues the result of the salary freeze attempting to balance his salary with other Athletic Directors in the area resulted in lower compensation and less responsibility than other Athletic Directors despite his experience. (ECF Docket No. 46-2, at 33; *see also* ECF Docket No. 46-1, at 9-10.) Finally, Reagle disputes Defendants' claim that she "voluntarily left the District to live with her boyfriend who had gotten a new job out of the area." (ECF Docket No. 44, at 15.) In fact, according to Reagle, the "unremitting nature of the attacks on her reputation and her fear that she would be fired" directly resulted in her resigning. (ECF Docket No. 46-1, at 11.)

---

[2] Act 93 of the Pennsylvania School Code requires school employers to "meet and discuss" administrator compensation, upon written request of a majority of the school administrators in the district, prior to the adoption of a compensation plan. 24 Pa.C.S.A. § 11-1164.

While Defendants' actions described above are not disputed, the reasons for their actions and whether they can be considered retaliation are at issue here. Therefore, it is clear that questions of material fact remain as to these issues, too. This Court cannot determine whether Defendants' actions were enough to deter the Plaintiffs, as persons with ordinary firmness, from exercising their rights. Hence, summary judgment would not be appropriate at this time.

3. **Causal connection**

The third prong under First Amendment Retaliation requires a causal connection between the protected activity, Plaintiffs' speech, and the retaliatory action taken. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The Third Circuit has stated that an inference of a causal link could be established if the timing of the retaliatory action is "unusually suggestive" of the retaliatory motive. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). However, this temporal proximity *alone* does not support a *finding* of a causal link. *Id.* (emphasis added). In support of this analysis, the Third Circuit looked to evidence of intervening antagonism or retaliatory animus, coupled with temporal proximity, to determine whether a causal link exists.

Defendants argue they were unaware of Plaintiffs' complaints to the police until "well after the EASD had received search warrants for Mr. Drago's computers and other information concerning the accessing of other employees' District computers." (ECF Docket No. 44, at 16.) But, even if they were aware, Defendants claim the alleged retaliatory conduct against Plaintiffs was justified, arguing the specific changes in employment status were in fact agreed upon by the parties prior to Plaintiffs' complaints and had nothing to do with the complaints to the police. (Id.) For instance, Defendants

maintain that McGinley was aware her employment status would change well before her complaints to the EASD and police. (Id.) Defendants maintain both Pokrivsak and Castrovinci were subject to a salary freeze for budgetary reasons initiated by new Superintendent, Mr. Reinhart, who was not involved in the Drago matter – further establishing lack of causation between the protected activity and retaliatory acts. (Id. at 17.) Defendants also argue Reagle voluntarily resigned from the EASD – not for the increasing hostility for which she claims – but because her boyfriend was moving out of the District. (Id.)

All of these facts – required to establish causation – are heavily disputed by the Plaintiffs which makes it difficult for the Court to grant summary judgment at this stage. Plaintiffs directly contradict Defendants in their counterstatement of facts by stating "Defendants were aware of the identities of the administrators, including the Plaintiffs, who went to the police." (ECF Docket No. 46-2, at 24.) Defendants conducted an emergency meeting to discuss the School Board's intent to take adverse action against the Plaintiffs, where one of the Defendants stated: "f**king fire them all!" (ECF Docket No. 46-2, at 24-25.) Although the statement's utterance is not disputed, the intended recipient(s) of the statement is unclear. Defendants claim it was made in support of the administrators and against the Board. (ECF Docket No. 44, at 15 n. 2.) However, Plaintiffs maintain it was intended as a threat against them which elucidates and demonstrates Defendants' retaliatory behavior. (ECF Docket No. 46-2, at 25.) Plaintiffs claim Defendants were aware of their reports to the Police by at least by February 1, 2013, the day the search warrant was served on EASD. (ECF Docket No. 46-2, at 54.)

Therefore, Plaintiffs argue Defendants retaliated against them because of their complaints to the police.

Thus, there are also genuine issues of material fact relating to causal connection under a First Amendment Retaliation cause of action.

C.  **CONCLUSION**

For all of the reasons explained above, this Court finds that genuine issues of material fact exist and declines to grant summary judgment. The motion for summary judgment will be denied by an accompanying order.